**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

LATOYA NORRIS                                                                                    PLAINTIFF

v.                                                      4:25-cv-00511-DPM-JJV

FRANK BISIGNANO,
Commissioner,
Social Security Administration                                                       DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge D.P.

Marshall Jr.  The parties may file specific objections to these findings and recommendations and

must provide the factual or legal basis for each objection.  The objections must be filed with the

Clerk no later than fourteen (14) days from the date of the findings and recommendations.  A copy

must be served on the opposing party.  The district judge, even in the absence of objections, may

reject these proposed findings and recommendations in whole or in part.

## RECOMMENDED DISPOSITION

Plaintiff, Latoya Norris, has appealed the final decision of the Commissioner of the Social

Security Administration to deny her claim for a period of disability and disability insurance

benefits. The Administrative Law Judge (ALJ) concluded that Ms. Norris had not been under a

disability within the meaning of the Social Security Act, because jobs existed in significant

numbers she could perform despite her impairments. (Tr. 18-33.)

This review function is extremely limited.  A court's function on review is to determine

whether the Commissioner's decision is supported by substantial evidence on the record as a whole

and to analyze whether Plaintiff was denied benefits due to legal error.  *Long v. Chater*, 108 F.3d

185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute.  Therefore, they will not be repeated in this opinion except as necessary.  After careful review of the pleadings and evidence in this case, I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint should be DISMISSED.

Plaintiff is young – only thirty-nine years old. (Tr. 53.) She is a high school graduate, (Tr. 54), and has past relevant work as a kitchen helper, stock clerk, and forklift operator. (Tr. 31.)

The ALJ[1] found Ms. Norris had not engaged in substantial gainful activity since June 13, 2022 – the alleged onset date.  (Tr. 20.)  She has "severe" impairments in the form of "diabetes mellitus with polyneuropathy; diabetic ulcers and osteomyelitis status-post bilateral toe amputations; chronic kidney disease with kidney injury; depressive disorder; anxiety disorder; and

---

[1]  The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

substance dependence." (*Id*.) The ALJ further found Ms. Norris did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."[2] (Tr. 22-24.)

The ALJ determined Ms. Norris had the residual functional capacity (RFC)[3] to:

> . . . lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for two hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant would require the use of an assistive device for ambulation, standing and balance, but they would remain at the workstation on task and the opposite upper extremity could be used to lift and/or carry up to the exertional limitation. The claimant should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as defined by the SCO. The claimant can never use foot controls bilaterally. The claimant can never work at unprotected heights and with moving mechanical parts; and can occasionally work in vibration, extreme cold and extreme heat. The claimant can understand, remember and carry out simple instructions and can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota, and can deal with occasional changes in a routine work setting. The claimant can occasionally have interactions with supervisors, coworkers and the general public.

(Tr. 24.)

Based on this RFC assessment, the ALJ concluded Ms. Norris could no longer perform any of her past work. (Tr. 31.) So, the ALJ utilized the services of a vocational expert to determine if jobs existed in significant numbers that Plaintiff could perform despite her impairments. Based in part on the testimony of the vocational expert, (Tr. 69-74), the ALJ determined Plaintiff could

---

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

[3] About the RFC assessment, it appears the ALJ intended to conclude that Plaintiff could perform a reduced range of sedentary work. (Tr. 24, 32, 72.) 20 C.F.R. 404.1567(a) defines sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. But the ALJ's RFC seems like "light work" as he concluded Plaintiff could "lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for two hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday." (Tr. 24)(*see* 20 C.F.R. 404.1567(b)). Nevertheless, Plaintiff makes no challenge to the ALJ's physical RFC finding and, thus, any issue is abandoned. *See Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006) (where a party does not raise an issue in her brief, the issue is deemed abandoned).

perform the jobs of lens inserter, wire wrapper, and final assembler. (Tr. 32.) Accordingly, the ALJ

determined Ms. Norris was not disabled. (Tr. 33.)

The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making

his decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff filed the instant Complaint

initiating this appeal. (Doc. No. 2.)

In support of her Complaint, Plaintiff argues the jobs identified by the vocational expert

exceed her mental abilities.  (Doc. No. 8 at 3-9.)  The RFC, in pertinent part, restricts Plaintiff to

jobs "that do not involve a specific production rate pace, such as assembly line work or an hourly

production quota."  (Tr. 24.)  Based on this limitation, Plaintiff argues:

> The VE's testimony is inconsistent with the ALJ's hypothetical that prohibited a
> production rate or hourly production quota. Inconsistent with these limitations, the
> jobs of lens inserter, wire wrapper, and final assembler require a specific production
> rate pace and quota as demonstrated by the: (1) Dictionary of Occupational Titles
> ("DOT") descriptions for these positions; and (2) VE testimony. A lens inserter's
> function is to fit lenses into plastic sunglass frames, and then place the frames onto
> a passing conveyor belt. In performing this work, the lens inserter's function must
> be carried out before the sunglass frames are then moved along the conveyor belt
> to another worker who prepares the setting of the lenses.

(*Id.* at 3-4.)

The Commissioner concedes that, based on the RFC and the job involving frames on a

passing conveyor belt, Plaintiff is unable to do this work.  (Doc. No. 9 at 4.)  However, the

Commissioner argues that the other two jobs identified by the VE  – wire wrapper and final

assembler – do not include any "production rate pace."  (Doc. No. 8 at 4-6.)

After careful review of the VE's testimony and the DOT, I find Plaintiff's argument to be

without merit.  *See* (Tr. 69-74), *DOT* 723.687-010 and DOT 713.687-018.  Unlike the job of lens

inserter, the DOT description for wire wrapper and final assembler reveals no job requirements

exceeding plaintiff's RFC.    And as the Commissioner aptly states, "in making her arguments

Plaintiff strays beyond the DOT descriptions and offers her own take on the job duties of wire wrapper and final assembler. *See* Pl. Br. 4-5." (Doc. 9 at 5.)

Next, Plaintiff argues, "The ALJ improperly formulated the RFC by failing to account for limitations that were established by physicians whom the ALJ found persuasive, and whose opinions were credited. The ALJ's failure to include these restrictions resulted in no evidence that Norris would be able to perform the work identified at Step Five." (Doc. No. 8 at 10.)  Plaintiff argues the ALJ committed error by not restricting her to jobs where the complexity of tasks are learned and performed by "rote." (*Id.* at 11.)  This limitation was included in the RFC determined by Jay Rankin, MD, and Laurie Clemens, PhD – both found to partially persuasive by the ALJ. (Tr. 29-30, 78, 89.)

Regarding these two doctors, the ALJ concluded:

State agency psychiatrist, Jay Rankin, MD and state agency psychologist, Laurie Clemens, PhD found the claimant experienced a mild restriction in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting and managing oneself (1A; 3A). They also completed a mental residual functional capacity stating the claimant is capable of simple, routine, and repetitive tasks and she retains the capacity for work where interpersonal contact is incidental to work performed, e.g. assembly work and where complexity of tasks is learned and performed by rote, few variables, and with little judgment and supervision is simple, direct and concrete (1A; 3A). As State agency consultants, these doctors are familiar with the disability determination process and the Regulations, and their opinions are supported by a review of the record in that they are accompanied by narratives that explain which evidence they relied upon when rendering their conclusions. Additionally, they have specialized training and expertise that make them qualified to render their opinions regarding the claimant's mental impairments. The findings are also consistent with objective evidence of record which demonstrates the claimant has moderate work related limitations. However, the opinions are only partially persuasive, as they are not entirely consistent with the whole of the evidence. In particular, the evidence supports a finding that the claimant has a moderate limitation in the area of understanding, remembering, or applying information, which limits her to only occasional changes in a routine work setting and to tasks that do not involve a specific production rate pace. Further limitations are not supported by the medical record including treating notes revealing that the claimant had a normal mood, was

alert, oriented times three, and her mental status was baseline (B23F/17); that the claimant had normal behavior, was alert, and oriented times three (B23F/57, 63); her mood was normal, behavior was normal, thought content was normal, judgment was normal, was alert, oriented times three, and was not in acute distress (23F/124-125); that she had an euthymic mood, full affect, normal behavior, judgment, and thought content, and was not in acute distress (22F/2-3); that she was alert, oriented, cooperative, with an appropriate mood and was in no acute distress (22F/5-6); and the testimony of the claimant that lives with mother, prepares simple meals, reads, and uses the Internet for online shopping..

(Tr. 29-30.)

After careful review of Plaintiff's argument, I find it unavailing . The ALJ is not required to adopt verbatim the findings of doctors that he determines to be persuasive, so long as substantial evidence in the record as a whole supports his decision. *See McKinney v. O'Malley,* No. 23-3220, 2024 WL 1327965 (8th Cir. Mar. 28, 2024); *Lane v. O'Malley, No. 23-1432,* 2024 WL 302395 (8th Cir. Jan. 26, 2024); *Wyatt v. Kijakazi,* No. 23-1559, 2023 WL 6629761 (8th Cir. Oct. 12, 2023).

Addressing Plaintiff's specific argument regarding the restriction to "rote" tasks, Defendant persuasively responds that "the ALJ properly based the RFC formulation on his reasoned assessment of the entire record, as the regulations prescribe . . . Notably, Plaintiff did not seek treatment from a mental health care specialist, did not take psychotropic medications on a regular basis, and did not display significant mental abnormalities on clinical examination, as the ALJ discussed." (Doc. No. 9 at 7)(citations omitted.)

Merriam-Webster Dictionary defines "rote" tasks are those learned by "use of memory usually with little intelligence" or "mechanical or unthinking routine or repetition." *See* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/rote (last visited Nov. 17, 2025). The job identified as "wire wrapper" is defined as:

Covers wired electrical appliance components, such as thermostats used in heating pads, with insulating fabric: Tears piece of adhesive from dispenser roll, and places

adhesive on workbench. Positions thermostat on fabric and arranges lead wires to prevent strain on soldered connections. Folds and seals fabric over thermostat, using fingers. May touch lead wires to test terminals and observe signal light to verify wiring continuity.

(*DOT* 723.687-010).

The DOT assigns a Specific Vocational Preparation ("SVP") Level Two to this job. Level Two is defined as "[a]nything beyond short demonstration up to and including one month." Additionally, the DOT has six Reasoning Levels, and the level assigned to the job of wire wrapper is Level Two. Level Two requires an employee to: "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles Appendix; Components of the Definitional Trailer. Taking all this together, I find learning by rote is fairly encompassed in the ALJ's RFC assessment.  The same is true for the job of final assembler where Reasoning is Level One. So, with an RFC of understanding, remembering and carrying out simple instructions and performing tasks that do not involve a specific production rate pace, and the ability to deal with occasional changes in a routine work setting, the ALJ could rightly conclude that Plaintiff could perform the jobs wire wrapper and final assembler.

Ms. Norris clearly suffers from some degree of physical and mental limitations from the combination of her impairments. But given this limited review under the law, my careful review of the ALJ's opinion, the medical record, and the briefs from the respective parties, I find that the ALJ's opinion is supported by substantial evidence.

Ms. Norris's medical records simply fail to support an allegation of complete disability. "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42

7

U.S.C. § 423(d)(1)(A) (emphasis added). A "physical or mental impairment . . . results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Here, the ALJ could rightly determine that Plaintiff was not disabled.

The ALJ carefully considered the record and made a supported determination that Plaintiff could perform a limited range of sedentary work. In coming to this conclusion, the ALJ considered the medical records and the opinions from medical professionals.

Plaintiff had the burden of proving her disability. *E.g., Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988). Thus, she bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Plaintiff has simply not met that burden. The record contains ample support that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991).

Plaintiff's counsel has done an admirable job advocating for her. But it is not the task of a court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372

F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, RECOMMENDED that the final decision of the Commissioner be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

DATED this 18th day of November 2025.

_____
JOE J.  VOLPE
UNITED STATES MAGISTRATE JUDGE